IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**BARTON HANKINS**                                                                         PLAINTIFF

v.                              CASE NO. 4:23-CV-01040-BSM

**CRAIN AUTOMOTIVE HOLDINGS, LLC**                                     DEFENDANT

**ORDER**

Crain Automotive Holdings's denial of deferred compensation benefits to Barton Hankins is reversed and Crain is ordered to pay Hankins $4,977,209.02 and prejudgment interest from April 1, 2023, until Hankins's claim is satisfied.

I. BACKGROUND

Hankins is Crain's former Chief Operating Officer. Affidavit of Barton Hankins ¶ 2, Stipulated Administrative Record ("AR") at 58. During Hankins's time with Crain, Crain offered Hankins a Deferred Compensation Plan ("DCP") to provide him "an opportunity to earn long-term compensation . . . so that he [would] have an increased incentive to work toward the attainment of [Crain's] long-term growth and profit objectives." AR at 1; DCP at 1, ¶ 5. Hankins accepted the offer and the parties entered the DCP on January 1, 2019. AR at 1, 7; DCP at 1, 7 (date and signatures respectively).

Sections 3.1, 3.2, and 3.3 of the DCP provide the method for calculating Hankins's deferred compensation and the events that trigger payment. AR at 3–4; DCP at 3–4. Hankins's separation from service is one event that triggers payment. AR at 3–4; DCP at §§ 3.1 & 3.2. Section 1.13 defines separation from service as "the date [Hankins] has a

separation from service with [Crain]" which is "based on whether the facts and circumstances indicate that [Hankins] and [Crain] reasonably anticipate that no further services will be performed after a certain date." AR at 3; DCP at 3. Although this definition is muddled, a reasonable interpretation is that Hankins is considered separated from his service with Crain when both parties understand that he no longer works there, such as when he resigns. Section 3.3 requires Crain to pay Hankins the vested portion of his deferred compensation on the "first day of the third month following" his separation from service. AR at 4; DCP at 4.

Hankins resigned on January 17, 2023—four years after the parties entered the DCP—and requested that Crain pay him $4,977,209.02, the vested portion of his deferred compensation as of April 1, 2023. Hankins Aff. ¶¶ 2–4, AR at 58; *see* DCP at § 3.3 (defining due date); AR at 23 (uncontested calculation of vested deferred compensation). Although Crain does not dispute Hankins's calculations, it denied his claim. AR at 50 & 64. Hankins exhausted his administrative remedies and is now suing to recover his deferred compensation. *See* Hankins Br. at 2–5, Doc. No. 10; Compl., Doc. No. 1.

## II. LEGAL STANDARD

The DCP is governed by section 502(a)(1)(b) of the Employee Retirement Income Security Act ("ERISA"), 29 United States Code section 1132(a)(1)(b). Benefit denials are reviewed for an abuse of discretion when the ERISA plan gives the plan administrator discretion to construe the terms of the plan or to determine plan eligibility. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Denials are reviewed *de novo* when the

ERISA plan does not give the plan administrator discretion to construe the terms of the plan or to determine benefit eligibility. *Id.* A hybrid of these two standards is applied to the DCP because it is a top hat plan. *See Craig v. Pillsbury Non-Qualified Pension Plan*, 458 F.3d 748, 749–52 (8th Cir. 2006); *see also* 29 U.S.C. § 1051(2) (defining top hat plan). Consequently, although the administrator's decisions will be reviewed *de novo*, deference is given to its "reasonable" decisions. *Craig*, 458 F.3d at 752. Although the DCP is governed by ERISA, it is a contract whose terms must be given their plain meanings. *See Knowlton v. Anheuser-Busch Cos. Pension Plan*, 849 F.3d 422, 429–30 (8th Cir. 2017).

## III. DISCUSSION

Crain denied benefits to Hankins claiming (1) the DCP is unenforceable because it contemplates separately signed employment and confidentiality agreements that were never entered, *see* Crain Br. at 11–18, Doc. No. 11; and (2) Hankins defrauded Crain, *see id.* at 18–19 & AR at 64. Both determinations are reversed because they are unreasonable.

A.   <u>Lack of Employment and Confidentiality Agreements</u>

Crain's denial of deferred compensation benefits based on the failure of the parties to enter into an employment contract or a confidentiality agreement is reversed. Crain's argument that, because the parties failed to enter into an employment agreement or confidentiality agreement defining the terms contemplated in Section 4, the DCP was not fully consummated and that the administrator cannot determine whether benefits should be granted, *see* Crain Br. at 11–18, is unreasonable.

Sections 1.14 and 3.3 provide that Hankins's separation from service is an event that

triggers the payment of deferred compensation. AR at 3–4; DCP at 3–4. Hankins's resignation therefore triggered Crain's obligation to pay deferred compensation. Crain, however, cites Section 4 which provides that Hankins will forfeit his right to payments if he "breaches the covenants set forth in the Employment Agreement and Confidentiality, Noncompete, and Nonsolicitation Agreement" or if he is terminated for cause. AR at 5; DCP at 5. Although Section 4 indicates that an employment agreement and a confidentiality agreement existed at the time the DCP was entered, this is not the case, and both parties knew it when they entered the DCP. Moreover, other than these references to an employment agreement and a confidentiality agreement, nothing in the DCP provides that these agreements have to be in place for the DCP to be enforceable. To the contrary, Section 1.12 states that January 1, 2019 to December 31, 2019 "shall constitute the initial Plan Year," which shows that the parties clearly intended for the DCP to take effect on January 1, 2019, despite the lack of any other agreements. AR at 3; DCP at 3.

Finally, the parties operated under the terms of the DCP for four years. At no time did Crain object to the terms of the DCP based on the lack of a written employment agreement or confidentiality agreement. *See* Hankins Aff. ¶¶ 8–27, AR at 59–62. Indeed, Crain did not raise this issue until Hankins resigned and sought compensation under the DCP. These facts indicate that Crain is simply looking for a way to avoid its obligation to Hankins.

    B.    <u>Fraud</u>

Crain's accusations of fraud against Hankins, *see* AR at 64, are unsubstantiated. Although Crain alleges fraud, Crain has failed to disclose the facts and documents upon

which these allegations rest. *See* Crain Br. at 19 (no sufficient additional evidence upon which to deny benefits).

## IV. CONCLUSION

For the foregoing reasons, Crain's denial of deferred compensation benefits to Hankins is reversed and Crain is ordered to pay Hankins $4,977,209.02 and prejudgment interest from April 1, 2023, until Hankins's claim is satisfied.

IT IS SO ORDERED this 16th day of February, 2024.

_____
UNITED STATES DISTRICT JUDGE